LOTTINGER, Chief Judge,
dissenting.
I respectfully dissent.
The majority has correctly stated the facts and the issue before this court. However, in attempting to resolve what many see as a conflict between La.R.S. 17:1201 A(2) and 17:1202, I believe the majority has erred. The majority resolves this alleged conflict without discussion by simply holding:
We believe a corollary to the permissive language of La.R.S. 17:1201 that school boards “may grant additional sick leave” is that school boards also have discretion to deny extended sick leave. We hold that the provisions of La.R.S. 17:1202 do not apply when a teacher has been denied extended sick leave by the school board.
By failing to review the history and source of La.R.S. 17:1201 A(2) and 17:1202, the majority fails to understand what the legislature was attempting to do. Act 215 of 1940 is the source of the two statutes in question. Act 215 in its entirety reads:
AN ACT
To provide for the granting of a minimum of ten (10) days leave of absence due to illness or other emergencies, per school year, to teachers employed in the Public Schools of this State without loss of pay; to prohibit all Parish School Boards from deducting any amount whatsoever from a teacher’s salary, in case of absence, except such amount as may have actually been paid the substitute teacher as authorized and provided for, herein; and further pro *1208 hibiting Parish School Boards from deducting amounts from teacher’s salaries for tardiness, except as herein provided for; and to provide penalties for violation of this Act.
Section 1. Be it enacted by the Legislature of Louisiana, That all teachers employed in the Public Schools of this | gState shall be entitled to and shall be allowed a minimum of ten (10) days leave of absence, as sick leave or in case of other emergencies, per school year, without loss of pay. The Parish School Board may grant additional sick leave, without loss of pay, or with such reduction of pay as they may establish and fix.
Section 2. That all Parish School Boards throughout this State are hereby prohibited from deducting any amount whatsoever from a teacher’s salary, in case of absence, unless a substitute teacher was employed and actually served, during such teacher’s absence; and only such amount may be deducted as was actually paid to the substitute teacher. Any teacher who suffers deduction from salary, under the provisions of this section, shall be entitled, upon request, to be furnished with the name and address of the substitute teacher. Nothing contained in this section shall be so construed as to authorize or permit any deduction from the pay of a teacher because of the employment or assignment of a substitute teacher during the minimum leave of absence period, without loss of pay, provided for, established and fixed in Section One (1) of this Act.
Section 3. That no teacher employed in the Public Schools of this State shall suffer any loss or deduction of pay for tardiness, unless such tardiness has caused loss of time from her official class duties, on more than two occasions and for a period of one hour or more, during any one school year. And in all cases where deduction of pay may be made, as herein provided, then and in such event, the amount of pay deducted shall be based on one (1) day’s pay proportioned to the period of tardiness. To definitely fix and establish the extent of time tardy, a teacher, upon request of her superior or principal, shall sign a slip stating the time of her arrival and reporting for duty; and if not requested so to do, she may voluntarily sign such slip and present it to her principal or superior.
Section 4. That any person who shall violate any provision of this Act shall be guilty of a misdemeanor and upon conviction before a court of competent jurisdiction, shall be fined not less than Twenty-five Dollars ($25.00) nor more than One Hundred Dollars ($100.00) and may be imprisoned for not less than five (5) days nor more than thirty (30) days, or both such fine and imprisonment, in the discretion of the Judge of Court.
Section 5. That all laws or parts of laws in conflict herewith are hereby repealed.
The source provisions in Act 215 are Sections 1 and 2 thereof. Except for subsequent legislative amendments, the source language has not changed. The title to Act 215 explains the act when it states “[t]o provide for the granting of a minimum of ten (10) days leave of absence due to illness or other emergencies, per school year, to | «teachers employed in the Public Schools of this State without loss of pay [and] to prohibit all Parish School Boards from deducting any amount whatsoever from a teacher’s salary, in case of absence, except such amount as may have actually been paid the substitute teacher....” The meaning and purpose of this act of the legislature could not be more clearly stated. And, as discussed below, this stated meaning and purpose is exactly what the body of the act does.
Section 1, now R.S. 17:1201 A(2), simply provided and now provides that public school teachers are guaranteed a minimum of ten (10) days leave of absence because of sickness or an emergency per school year without loss of pay. The distinctive and all important clause is “without loss of pay.” This simply and clearly means that for a minimum of ten (10) days a public school teacher can be absent because of sickness or an emergency and not one penny can be deducted from the teacher’s salary. During this ten (10) day period of time it is presumed that the school board will employ and pay a substitute to take over the duties of the absent teacher and that funds are expended over and above *1209 the budgeted salary of the absent teacher. We must all assume that school boards are responsible and that they will hire a substitute teacher and that they have contemplated and budgeted for absences “without loss of pay.”
The last sentence of both Section 1 of Act 215 and R.S. 17:1201 A(2) grants authority to school boards to “grant additional sick leave, mthout loss of pay, or with such reduction of pay as they may establish and fix.” “[S]uch reduction of pay as they may establish and fix” must mean more than without pay, because without the school board utilizing the last sentence that would be the result anyway. Absent this last sentence and without further legislative action, an absent school teacher is only guaranteed ten (10) days of absence without loss of pay. However, this last sentence authorizes a scenario of a school board granting additional sick leave with full pay or less than full pay even assuming the school board paid the substitute the full teacher salary. But, the legislature did not stop there, it went further.
In Section 2 of Act 215, now La.R.S. 17:1202, the legislature prohibited school boards from deducting from a teacher’s salary, in case of absence, any amount unless a substitute teacher was employed and actually served during the teacher’s uabsence, and only such an amount as was actually paid to the substitute teacher. Simply stated, this section limits the amount that may be deducted from an absent teacher’s salary. There is no limitation to the application of this section. It applies in all instances of teacher absence during the contracted teaching period because of sickness or emergency except where the teacher is receiving full pay.
If all the legislature had in mind was to guarantee ten (10) days of leave without loss of pay and permissive authority to school boards to grant more than ten (10) days with full pay or less than full pay, there would have been no need to enact Section 2 of Act 215. But, the legislature did enact Section 2, and the majority errs in not ascribing meaning to it.
In support of its position the majority cites Gayle v. Porter, 239 So.2d 739 (La.App. 4th Cir), writ refused, 257 La. 171, 241 So.2d 531 (1970), though it attempts to distinguish same on a dictum statement by the court. The holding of the court in Gayle is simply stated:
We find no conflict between R.S. 17:1201 and R.S. 17:1202.- The former addresses itself to the allowance of a minimum amount of sick leave to which the teacher is entitled and the latter addresses itself to the amount of deduction from wages in the event of illness. A reading of both sections together leads us to conclude that teachers are allowed at least 10 days sick leave with full pay regardless of whether a substitute teacher is hired. If the teacher is absent over 10 days for illness or other emergency then the Board may deduct only the amount that was paid to a substitute teacher if a substitute was hired. If none was hired, then there is to be no deduction. Section 1202 merely bolsters 1201 in that it prohibits the deduction from the pay of a teacher who is ill during any of the guaranteed 10 days leave provided for in Section 1201. The first part of 1202 obviously refers to a situation where a teacher is absent because of illness, beyond the guaranteed 10 days leave. It prohibits the School Board in such a case from deducting any amount from a teacher’s salary in ease of such absence unless a substitute was employed and actually served during the teacher’s absence and only such amount may be deducted as was actually paid to the substitute teacher.
239 So.2d at 742.
As noted, the supreme court refused writs but with the explanation, “[n]o error of law.” The language in R.S. 17:1201 A(2) and 17:1202 as it relates to the issue before this court has not been changed, much less since the Gayle decision. However, lain the 1987 and 1988 Regular Sessions of the Louisiana Legislature bills[1] were introduced to repeal R.S. -17:1202. Neither of these bills were enacted into law. We must assume that the legislature is aware of judicial decisions interpreting acts of the legislature. Is the *1210 failure or refusal of the legislature to repeal R.S. 17:1202 an indication that the legislature agrees with the interpretation in the Gayle decision?
It occurs to this writer that prior to Act 216, some fifty (50) plus years ago, public school teachers had no protection from not getting paid if they were sick or absent because of an emergency. Thus it seems that the legislature acted within its wisdom, and wisely so I might add, in enacting Act 215 of 1940 to protect the public school teachers of this state and at the same time not overburden the school boards by providing:
1) ten (10) days guaranteed sick or emergency leave without loss of pay,
2) authority for school boards to grant additional sick leave without loss of pay and/or with a reduction in pay, but
3) in no event could a deduction from a teacher’s salary be made in case of absence unless a substitute teacher was employed and served, and the deduction could not exceed the amount paid the substitute.
This plan or scheme is similar to an insurance plan which would pay the teacher’s salary during the sickness less any amount it cost for a substitute. It was nothing more than legislation granting the public school teachers of this state an added benefit in case of sickness. Except for the ten (10) days of guaranteed leave without loss of pay, this legislative plan costs the school boards nothing because they already contracted and budgeted to pay the teacher, and it is from that source that they pay for the substitute teacher. It certainly could be argued that what the school boards seek to do is pay the substitute teacher less than the contracted for salary and pocket the remainder for another day. Today by this opinion the majority takes away from the public school teachers a battle won more than fifty (50) years ago.
With this opinion the majority creates a conflict between the circuits as to the interpretation of these statutes which now cries for the supreme court to resolve and settle this dispute.

. House Bill No. 850 in 1987 and Senate Bill No. 131 in 1988.